Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LENNON JUNIOR MICHAEL VINCENT,**<br><br>　　　　　　　　　**Petitioner,**<br><br>　　　　v.<br><br>**ERIC ROKOSKY,** *in his official capacity as Warden of Elizabeth Detention Center*, *et al.*,<br><br>　　　　　　　　　**Respondents.** | **Civil Action No.: 25-17912 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

　　**THIS MATTER** is before the Court on the counseled petition for a writ of habeas corpus under 28 U.S.C. § 2241 (D.E. No. 1 ("Petition" or "Pet.")), filed by petitioner Lennon Junior Michael Vincent ("Petitioner"). According to the Petition, Petitioner is a native and citizen of the Trinidad and Tobago, and a lawful permanent resident ("LPR") of the United States, who is currently confined as an immigration detainee at the Elizabeth Detention Center in Elizabeth, New Jersey. (*Id.* ¶¶ 6, 11, 20). Petitioner names as respondents in their official capacities: Eric Rokosky, Warden of the Elziabeth Detention Center; John Tsoukaris, Director of the Newark Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, the Secretary of the Department of Homeland Security ("DHS"); and Pam Bondi, Attorney General of the United States (together, "Respondents"). (*Id.* ¶¶ 11–14). Respondents answered the Petition (D.E. No. 4 ("Response" or "Resp.")); Petitioner filed a reply (D.E. No. 5 ("Reply")), and a letter requesting

an expedited decision on his Petition (D.E. No. 6 ("Letter")).  Having considered the submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons set forth below, the Petition is **GRANTED**.  Within seven (7) days of the date of entry of the accompanying Order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge ("IJ").  At that bond hearing, the Government shall bear the burden of justifying continued detention by showing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.  Within three (3) days of that bond hearing, Respondents shall file a written notice of the outcome of that hearing with this Court.

**I.     BACKGROUND**

Petitioner, who was then fourteen, entered the United States in 1989.  (Pet. ¶ 1).  In 2001, he became an LPR.  (*Id.*)  Petitioner was gainfully employed prior to his detention, and he financially supports his partner and five U.S. citizen children (ranging in age from two to twenty-six).  (*Id.* ¶¶ 1, 20, 48).  Petitioner also suffers from Graves' Disease, an autoimmune disorder causing hyperthyroidism, and requiring him to receive a daily medication called Synthroid.  (*Id.* ¶ 54).

In 2007, Petitioner pled guilty to bank fraud under 18 U.S.C. § 1344(2) and conspiracy to commit bank fraud under 18 U.S.C. § 1349, and the United States District Court for the Southern District of New York sentenced him to five years' probation.  (*Id.* ¶¶ 27–28).

Between February 24, 2025 and March 7, 2025, Petitioner traveled to Trinidad and Tobago to deal with probate matters relating to his mother's estate.  (*Id.* ¶ 31).  On March 7, 2025, immigration officials detained Petitioner at John F. Kennedy International Airport, and he was

charged as being an inadmissible "arriving alien" under 8 U.S.C. § 1182(a)(2)(A)(i)(1) as a noncitizen convicted of a "crime involving moral turpitude."  (*Id.* ¶ 33).

Petitioner retained counsel, and on March 31, 2025, Petitioner filed an application for discretionary parole under 8 U.S.C. § 1182(d)(5)(A) (which was denied on April 18, 2025).  (*Id.* ¶¶ 38, 43).  At his initial immigration court hearing on April 1, 2025, Petitioner unsuccessfully requested that the case be set for a final merits hearing for cancellation of removal for LPRs, 8 U.S.C. § 1229b(a), and a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h).  (*Id.* ¶ 39).  He subsequently filed formal applications for cancellation of removal and an inadmissibility waiver. (*Id.* ¶ 40).  On June 11, 2025, the IJ conducted a merits hearing and denied both applications for relief.  (*Id.* ¶ 45).

On July 10, 2025, Petitioner filed a timely appeal to the Board of Immigration Appeals ("BIA").  (*Id.* ¶ 46).  On December 5, 2025, the BIA dismissed Petitioner's administrative appeal.  (Resp. at 1; D.E. No. 4-2).

Petitioner filed a counseled petition for review with the United States Court of Appeals for the Third Circuit on December 8, 2025.  (3d Cir. No. 25-3417, D.E. No. 1).  On December 9, 2025, Petitioner moved for a stay of removal.  (*Id.*, D.E. No. 6).  On December 10, 2025, in accordance with the Standing Order of the Third Circuit dated August 5, 2015, the Third Circuit Clerk temporarily granted the stay motion and ordered that "removal is stayed until such time as the Court can consider the motion for stay of removal."  (*Id.*, D.E. No. 7-1 at 1).  The Attorney General filed a response to the motion for a stay of removal on December 19, 2025, and (after he was granted an extension of time) Petitioner filed a reply in further support of his motion on January 8, 2026.  (*Id.*, D.E. Nos. 10, 12–13, 16).  The administrative record was filed on January 7, 2026, and Petitioner filed an unopposed motion to modify the briefing schedule, which was granted on

3

January 14, 2026. (*Id.*, D.E. Nos. 14–15, 17). According to the schedule issued on January 15, 2026, Petitioner's brief is due on or before April 15, 2026. (*Id.*, D.E. No. 18).

On November 24, 2025, Petitioner filed his habeas Petition alleging unreasonable civil detention in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. (D.E. No. 1 ¶¶ 81–89). On December 3, 2025, the Court ordered Respondents to file an expedited answer to the Petition (D.E. No. 3 ("Order to Answer")),[1] which was filed on December 22, 2025 (D.E. No. 4). Petitioner filed his reply on January 2, 2026 (D.E. No. 5), and, on January 23, 2026, he requested an expedited decision on his Petition on the grounds of: "(1) the serious difficulties he is facing in detention as a result of the inadequate management of his chronic health condition; and (2) the emergency housing situation faced by his family members, including his two-year old daughter . . ., who potentially face eviction from a rent-stabilized apartment that [Petitioner] has occupied for decades" (D.E. No. 6 at 1).

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2241, habeas relief may be granted if an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States. U.S. Const., Art. I, § 9, cl. 2." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A habeas petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941).[2]

---

[1] The Court also ordered that, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), Petitioner shall not be transferred from the District of New Jersey, or removed from the United States, pending further order of this Court. (Order to Answer at 2).

[2] In *Khalil v. President, United States of America*, --- F.4th ---, 2026 WL 111933 (3d Cir. 2026) (per curiam), the Third Circuit recently considered "important jurisdictional questions about habeas corpus and immigration," *id.* at

### III.  DISCUSSION

It is undisputed that, because Petitioner has not completed appellate review of his order of removal, and the Third Circuit has temporarily stayed his removal, Petitioner is subject to mandatory detention under 28 U.S.C. § 1225(b).  (Pet. ¶ 37; Resp. at 2); *see also Mashchenko v. Rokosky*, No. 25-12387, 2026 WL 185204, at *2 (D.N.J. Jan. 25, 2026) ("Here, Petitioners do not have a final order of removal and are in mandatory detention under 8 U.S.C. § 1225(b), which applies to arriving aliens.").  Petitioner asserts that his continued prolonged detention without a bond hearing violates his Fifth Amendment due process rights.  (Pet. ¶¶ 81–89).

"Whether noncitizens detained under § 1225(b) have due process rights to avoid prolonged detention has not been addressed by the Supreme Court or the Third Circuit."[3]  *Mashchenko*, 2026 WL 185204, at 2 (D.N.J. Jan. 25, 2026) (citing *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025)).  However, in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020)), the Third Circuit held that "an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause" and that the Due Process Clause demands a bond hearing once detention has become unreasonable, *id.* at 210–11.  "Lower courts in the Third Circuit have applied the *German Santos* factors in analyzing whether prolonged detention under § 1225(b) violates due process."  *Mashchenko*, 2026 WL 185204, at *3 (first citing *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018); then citing *Maksaddzhon A.*, 2025 WL 3648710, at *3; then citing *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 443 (D.N.J. 2019); and then citing *A.L. v. Oddo*, 761 F. Supp. 3d

---

*1.  However, the Third Circuit explicitly acknowledged that the district courts retain jurisdiction over habeas claims challenging the length-of-confinement without a bond hearing.  *See id.* at *11–12.

3      In *Jennings v. Rodriguez*, 583 U.S. 291 (2018), the Supreme Court held that the text of § 1225(b) does not impose any limitations on the length of detention, but the Court did not consider whether individuals subject to unreasonably prolonged detention under this statutory provision are constitutionally entitled to bond hearings, *see id.* at 298, 312.

822, 826 (W.D. Pa. 2025)). Respondents do not dispute the applicability of the *German Santos* test in the present context, and they recognize that "the due process clause prohibits unduly prolonged detention." (Resp. at 3 (citing *Zadvydas v. Davis*, 553 U.S. 678, 690 (2001)). Accordingly, the Court applies the *German Santos* factors in assessing whether Petitioner's detention has become unreasonably prolonged and thereby violates his right to due process.

The determination of whether a petitioner's detention has become unreasonably prolonged is a "highly fact-specific inquiry" without any bright-line rules. *German Santos*, 965 F.3d at 210–11. There are four factors for consideration: (1) the duration of the petitioner's detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of the petitioner's confinement. *Id.* at 211–12 (citing the factors in *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 475–78 (3d Cir. 2015)). "The most important factor is the duration of detention." *Id.* at 211 (first citing *Chavez-Alvarez*, 783 F.3d at 475–78; and then citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233–34 (3d Cir. 2011)). "[A] lawful permanent resident's detention [becomes] unreasonable sometime between six months and one year." *Id.* (alterations added) (citing *Chavez-Alvarez*, 783 F.3d at 478). In addition to the length of detention, the Court must consider the likelihood of continued detention, and "[w]hen the noncitizen's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id.* (citing *Chavez-Alvarez*, 783 F.3d at 477–78). Third, the Court considers the reasons for any delays, including "whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay.'" *Id.* (alteration in original) (quoting *Diop*, 656 F.3d at 232). However, "we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." *Id.* (citing *Chavez-Alvarez*, 783 F.3d at 476–77). Finally, the Court must consider whether the noncitizen's

6

"conditions of confinement are 'meaningfully different[ ]' from criminal punishment." *Id.* (alteration in original) (quoting *Chavez-Alvarez*, 783 F.3d at 478).

The Court begins with the most important factor: the length of detention. Taken into custody on March 7, 2025, Petitioner has been detained for more than ten months. Respondents contend that courts have held considerably longer § 1225(b) detentions were not unreasonable. (Resp. at 3 (first citing *Adel G. v. Warden, Essex Cnty. Jail*, No. 19-13512, 2020 WL 1243993, at *2 (D.N.J. Mar. 13, 2020); then citing *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 222 (S.D.N.Y. 2020); and then citing *Rodriguez v. Bondi*, No. 25-791, 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025)). However, in *German Santos*, the Third Circuit stated that "a lawful permanent resident's detention [becomes] unreasonable sometime between *six months and one year*." *Id.* at 211 (alteration added) (emphasis added) (citing *Chavez-Alvarez*, 783 F.3d at 475–78). Recent cases from district courts in this Circuit have relied on *German Santos* to conclude that the duration factor weighs in favor of petitioners detained for approximately ten months.[4] *See C.B. v. Oddo*, No. 25-0263, 2025 WL 2977870, at *5 (W.D. Pa. Oct. 22, 2025) ("[Petitioner] has been detained continuously since December 9, 2024 – more than 10 months as of this writing. This delay falls within the range where courts have held that delays start to become unreasonable." (citing *German Santos*, 965 F.3d at 211)); *A.L.*, 761 F. Supp. 3d at 826 ("Petitioner has been held in custody without a bond hearing for nearly ten months since March 18, 2024. This delay falls within the range where courts have held that delays start to become unreasonable." (citing *German Santos*, 965 F.3d at 211)). In *Mashchenko*, the court concluded that nine months' detention is an

---

[4] In addition, the fifteen-month discussion in *Adel G.* (the only case from a district court in the Third Circuit cited by Respondents) is dicta because the court granted habeas relief to a petitioner who had been detained for three years. *See Adel G*, 2020 WL 1243993, at *2.

"unreasonably long time." 2026 WL 185204, at *3 (quoting *German Santos*, 965 F.3d at 213) Accordingly, the first *German Santos* factor strongly weighs in favor of Petitioner.

In addition, the other three factors weigh in Petitioner's favor. In fact, Respondents do not mention the other factors in their Response. As to the second factor (whether the detention is likely to continue), Petitioner shows that there is no indication that the end of his detention is imminent. Specifically, the Third Circuit has temporarily stayed Petitioner's removal, and Petitioner's opening appellate brief is not due until April 15, 2026. (3d Cir. No. 25-3417, D.E. Nos. 7, 19). Furthermore, regarding the third factor, "the Government has not claimed that [Petitioner] occasioned any delays in his proceedings, or raised arguments that were not *bona fide*." (Reply at 4). On the contrary, at his initial hearing before the IJ (held shortly after he was detained), Petitioner requested that the case immediately be set for a final merits hearing to consider whether to grant cancellation of removal and a waiver of inadmissibility, but the IJ directed Petitioner to file written applications for relief (which were then filed promptly). (Pet. ¶¶ 39–40). Finally, "[i]t is also undisputed that Petitioner[ ] [is] detained in [a] jail-like setting[ ]." *Mashchenko*, 2026 WL 185204, at *4 (considering conditions of detention at the Elizabeth Detention Center). "Moreover, the Court considers Petitioner's medical needs in assessing whether his conditions of confinement are 'meaningfully different' from criminal punishment, and finds that this factor also weighs in his favor." *Maksaddzhon A.*, 2025 WL 3648710, at *3; (*see also, e.g.*, Letter at 1–2 (alleging that Elizabeth Detention Center unilaterally substituted Petitioner's prescribed medication for his Graves' Disease with a generic version resulting side effects including insomnia, fatigue, chronic headaches, itchy sensations, altered sensations of hot and cold, hair loss, and skin discoloration and that he has not been permitted to see an endocrinologist or other specialist).

In conclusion, "[g]iven its length, likelihood of continuing, and conditions, [Petitioner's detention] has become unreasonable." *German Santos*, 965 F.3d at 212. Respondents shall provide Petitioner with an individualized bond hearing before an IJ; at that bond hearing, "the Government bears the burden of justifying continued detention by showing by clear and convincing evidence that the alien is a flight risk or danger to the community," *Wahi v. Pittman*, 2025 WL 2918948, at *2 (D.N.J. Oct. 15, 2025) (citing *German Santos*, 965 F.3d at 213–14).

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Petition. Within seven (7) days of the date of entry of the accompanying Opinion, Respondents shall provide Petitioner with an individualized bond hearing before an IJ, and, at that bond hearing, the Government shall bear the burden of justifying continued detention by showing by clear and convincing evidence that Petitioner is a flight risk or danger to the community. Within three (3) days of that bond hearing, Respondents shall file a written notice of the outcome of that hearing with this Court.

An appropriate order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**